UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH M. BEARDEN,
d/b/a J & J TOMATO FARM,

      Plaintiff,

v.

GREAT LAKES PRODUCE AND
MARKETING LLC, and EDWIN A.
KERLIKOWSKE,

      Defendants.
_____/

Case No. 1:12-CV-700

HON. GORDON J. QUIST

**OPINION**

      Plaintiff, Joseph Bearden, brought this action against Defendants Great Lakes Produce and Marketing LLC and Edwin Kerlikowske (collectively Great Lakes) for various claims, including an alleged violation of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a *et seq*. Bearden has filed a motion to include contractual attorney's fees and costs in the final judgment. Great Lakes has filed a response. For the reasons set forth below, the Court concludes that Bearden is entitled to attorney's fees but the Court will order Bearden to submit additional evidence in support of its request.

**I. FACTUAL BACKGROUND**

      In July 2011, Great Lakes ordered a shipment of grape tomatoes from Bearden, doing business as J & J Tomato Farm. Bearden shipped the tomatoes on July 13, 2011. Great Lakes hired a driver to pick up the shipment, and the driver signed a bill of lading for the shipment dated July 13, 2011. The bill of lading listed the quantity (1,800 total boxes) of bulk grape tomatoes but did not include a price per unit, and indicated the total amount due was $0.00. Bearden also sent Great

Lakes an invoice dated July 13, 2011 for $28,710.00, which Great Lakes alleges arrived a week later. By the time the invoice arrived, Great Lakes had already accepted the shipment and distributed the tomatoes to its customers. Both the bill of lading and invoice included the following language:

> "the perishable commodities listed on this invoice are sold subject to the statutory trust authorized by section 5 (c) of the perishable agriculture commodities act, 1930 (7 u.s.c. 499e (c) [sic], the seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."
> any claims for shortage, damage or condition will not be honored unless reported to shipper in writing within eight (8) hours of arrival and with a timely USDA inspection
> Interest shall accrue at 1.5% per month (18% per annum)
> buyer agrees to pay all costs of collection including attorney's fees.

(Bill of Lading, Docket no. 20-1, Page ID 93; Invoice, Docket no. 23-1, Page ID 155.) Upon receipt of the invoice, Great Lakes did not contact Bearden to object to the contractual terms. This transaction was the first and only transaction between the parties. Bearden filed this litigation in July 2012 for violations of PACA and breach of contract. The parties now dispute whether Bearden is entitled to attorney's fees and costs of collection pursuant to their contract.

## II. DISCUSSION

### A. Entitlement to Attorney's Fees

The PACA statute allows a party to collect "all sums owing" in connection with the perishable commodities transactions at issue in a case. 7 U.S.C. § 499e(c)(2). If the parties have contracted for attorney's fees, courts have held that attorney's fees are encompassed within the language "all sums owing." In *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629 (11th Cir. 2004) (per curiam), the Eleventh Circuit observed:

> Had Congress intended to limit PACA claims solely to the price of the commodities, it could have inserted language reflecting that limitation in 7 U.S.C. § 499e(c)(2). Instead, it chose to allow "full payment of the sums owing in connection with [commodities] transactions." This unambiguously encompasses not only the price

2

> of commodities but also additional related expenses. Such related expenses include attorney fees and interest that buyers and sellers have bargained for in their contracts.

*Id.* at 632 (citing *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1223 (9th Cir. 2002); *Sherman v. Carter*, 353 U.S. 210, 220, 77 S. Ct. 793, 799 (1957) (finding the phrase "sums justly due" encompasses attorney's fees under the Miller Act, 40 U.S.C. § 3131)); *see also La Grasso Bros. v. Am. Foodservice, L.L.C.*, No. 10-10711, 2011 WL 891221, at *4 (E.D. Mich. Mar. 11, 2011) (finding that PACA allows for attorney's fees if a contractual right to such fees exists).

To determine whether the attorney's fees and collection costs provision is a part of the contract, this Court looks to the Uniform Commercial Code § 2-207 as adopted in Michigan. Michigan Compiled Laws § 440.2207 states:[1]

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract *unless*:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) *they materially alter it*; or
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

Mich. Comp. Laws § 440.2207 (emphasis added). The Committee Comments to § 2-207 provide in pertinent part:

---

[1] The parties agree that Michigan law applies in this case.

> 4. Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; a clause requiring a guaranty of 90% or 100% deliveries in a case such as a contract by cannery, where the usage of the trade allows greater quantity leeways; a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable.
>
> 5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: a clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control, similar to those covered by the provision of this Article on merchant's excuse by failure of presupposed conditions or a clause fixing in advance any reasonable formula of proration under such circumstances; a clause fixing a reasonable time for complaints within customary limits, or in the case of a purchase for subsale, providing for inspection by the sub-purchaser; a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for; a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting remedy in a reasonable manner (see Sections 2-718 and 2-719).

Mich. Comp. Laws § 440.2207. Neither of the Committee Comments addresses an attorney's fee provision.

"An additional term is a material alteration if it 'results in a surprise or hardship if incorporated without the express awareness by the other party.'" *ISRA Vision, AG v. Burton Indus., Inc.*, 654 F. Supp. 2d 638, 648 (E.D. Mich. 2009) (quoting *Plastech Eng'd Prods. v. Grand Haven Plastics, Inc.*, No. 252532, 2005 WL 736519, at *5 (Mich. Ct. App. Mar. 31, 2005)). "The majority of the courts reviewing whether an additional term is a material alteration hold that it depends on the unique facts of each particular case." *Plastech*, 2005 WL 736519, at *5. Michigan Courts "consider many factors in determining whether a party was unreasonably surprised by an additional term, such as prior course of dealing; the number of confirmations exchanged; absence of industry custom; whether the addition was clearly marked; and whether the addition is contained within the party's own standard contract." *Id.* "With regard to hardship, the analysis of the existence of

hardship focuses on whether the clause at issue would impose substantial economic hardship on the nonassenting party." *Id.* (internal quotation marks and citations omitted).

"UCC 2-207 in essence supplies a presumption that the additional terms contained in confirmation forms are not read by the opposing party. Comment 4 to UCC 2-207 states that surprise occurs when a term is included without the express *awareness of* the other party." *Am. Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1190–91 (10th Cir. 1992) (internal quotation marks and citations omitted) (emphasis in original). "[A]wareness does not necessarily require a party actually to have read the additional term. Therefore, on the issue of surprise there is both a subjective and an objective element to the inquiry." *Id.* (quoting *Dale R. Horning Co. v. Falconer Glass Indus.*, 730 F. Supp. 962, 966 (S.D. Ind. 1990)). "Courts should first make factual findings as to whether a nonassenting party subjectively knew of an added term. It must then make findings of fact concerning whether that party should have known that such a term would be included." *Id.* "'[T]he burden of proving the materiality of the alteration must fall on the party that opposes inclusion.'" *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002) (quoting *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 223 (2d Cir. 2000)). "This is so because the UCC presumes that between merchants additional terms will be included in a contract. Thus, 'if neither party introduced any evidence, the [proposed additional term] would, by the plain language of § 2-207(2), become a part of the contract.'" *Id.*; *see also Dale R. Horning*, 730 F. Supp. at 966 (quoting *Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989)) (finding that between merchants the nonassenting party bears the burden of showing a term materially alters a contract).

In this case, the language of § 2-207 presumes Great Lakes to have read the additional terms—and for those terms to become a part of the contract—unless Great Lakes objects within a

reasonable period of time or the provision materially altered the contract. Great Lakes did not object to the contract's terms. Therefore, its only argument is that the provision materially altered the contract.

Applying the unreasonable surprise factors, *Plastech*, 2005 WL 736519, at *5, Great Lakes either knew or should have known that an attorney's fees provision was in the contract. First, Great Lakes has not shown the absence of custom regarding attorney's fees provisions in produce contracts. Great Lakes concedes that it uses attorney's fees provisions in its own produce contracts and has even enforced them in court. (*See* Docket no. 20-2, Page ID 98.) The burden is on Great Lakes to introduce evidence in support of its argument that there is an absence of custom, thereby rendering an attorney's fees provision a material alteration. Great Lakes cites *Mikey's Choice LLC v. Fagos LLC*, No. 08-cv-4492, 2010 WL 935550, at *4 (E.D.N.Y. Feb. 19, 2010) for the proposition that attorney's fees provisions in produce contracts are not universal. However, its reliance on *Mikey's* is misplaced. The court in *Mikey's* held that the plaintiff could not rely on a PACA letter of intent—as opposed to a contract between the parties—to collect attorney's fees. *Id.* The court surveyed cases in which courts have granted attorney's fees in PACA cases, but the court did not make a finding on the existence or absence of an industry custom. *See id.* If anything, the case lends support to Plaintiff's argument that attorney's fees provisions are quite common in produce cases and a merchant like Great Lakes should not be surprised by such a provision. Thus, Great Lakes has failed to establish that there is an absence of industry custom, and the evidence suggests that such provisions are common in produce contracts. This factor weighs in favor of granting Bearden's motion.

Second, and similarly, there is evidence that both parties' standard contracts include attorney's fees provisions. This factor weighs strongly in favor of granting Bearden's motion.

Third, the parties do not have a prior course of dealing. "Thus, this transaction was not one involving parties familiar with the other's forms, terms, and practices." *Comark Merch., Inc. v. Highland Grp., Inc.*, 932 F.2d 1196, 1202 (7th Cir. 1991). This factor weighs against granting Bearden's motion.

Fourth, the parties exchanged two written confirmations, at least one of which arrived at the time of shipping.[2] This factor does not weigh heavily in favor of either party. Although the parties lack a prior course of dealing, thus making written confirmation important, two written confirmations (with the opportunity to raise objections to the terms within a reasonable time) is sufficient to give a buyer notice of additional terms to the agreement.

Finally, whether the attorney's provision was conspicuously marked does not weigh heavily in favor of either party. The provision was in bold lettering in the center of the first and only page of the bill of lading and the separate invoice. Although the provision is at the end of a paragraph of terms that are not separated by full sentences, the terms constituted only thirteen total lines of text. They were not buried in small text on the back side of the document. *Cf. Comark*, 932 F.2d at 1202 (holding a district court did not clearly err in finding an attorney's fees clause materially altered the contract between first-time parties where the attorney's fee provisions were on the back of the price quotations).

Taken together, the balance of the factors weighs in favor of granting Bearden's motion. The factors support that Great Lakes knew or should have known that attorney's fees were included in the contract and did not constitute a surprise, material term.

---

[2] Great Lakes argues that it cannot be bound by the terms of the bill of lading because it hired an independent driver to pick up the shipment. However, that is not the issue. Although the Court agrees that Great Lakes did not manifest any apparent authority in the driver to *alter* the contract, the bill of lading still constitutes a written confirmation of the contract between the parties that the driver was hired to deliver to Great Lakes. Thus, the Court will still look to the bill of lading, as well as the invoice, for purposes of applying U.C.C. § 2-207.

Great Lakes cites two additional, non-binding federal district cases in which courts have found attorney's fees provisions material under U.C.C. § 2-207. First, Great Lakes cites *Food Team International v. Unilink, LLC*, 872 F. Supp. 2d 405, 421 (E.D. Pa.). The court in *Food Team* concluded that the attorney's fees provision was material because it was not in the original contracts negotiated between the parties, and, unlike in *Herzog Oil Field Service, Inc. v. Otto Torpedo Co.*, 391 Pa. Super. 133, 137, 570 A.2d 549, 551 (Penn. 1990), the provision shifted payment of all attorney's fees—as opposed to only a portion—to defendants. However, *Food Team* is distinguishable from the present case. Although the Michigan and Pennsylvania versions of § 2-207 are nearly identical, the court did not apply the Michigan factors as enumerated in *Plastech*, 2005 WL 736519, at *5, to determine whether the defendant knew or should have known that an attorney's fees provision was a part of the contract. Moreover, unlike here, the *Food Team* court did not have evidence that both parties routinely included attorney's fees provisions in their standard contracts. Thus, *Food Team* is distinguishable. Great Lakes also cites *Johnson Tire Service, Inc. v. Thorn, Inc.*, 613 P.2d 521, 524 (Utah 1980). However, *Johnson* is not persuasive because the Court did not conduct a factor-by-factor analysis, but merely concluded that an attorney's fee provision materially altered the offer, and thus did not fall within the "additional or different terms" provision of the U.C.C.

Therefore, in the context of the relationship between Bearden and Great Lakes, Great Lakes knew or should have known that a provision for collection costs and attorney's fees was a part of the contract. Having failed to establish that the provision for attorney's fees materially altered the contract, it cannot be said that Great Lakes was "unreasonably surprised" by the additional term, *Plastech*, 2005 WL 736519, at *5.

Regarding undue hardship, the Court recognizes that the attorney's fees may impose upon Bearden some economic hardship, but an economic hardship is not equivalent to an undue hardship. A party is bound by the contract he signs, absent a valid exception.

### B. Reasonable Attorney's Fees

Bearden requests attorney's fees in the amount of $22,104.28 for approximately 56 hours of work and various collection costs. Great Lakes makes three objections to the reasonableness of Bearden's request: (1) Bearden has redacted line items at the ends of its invoices, which may reflect billing reductions or other adjustments; (2) Bearden's invoices fail to identify each entry's timekeeper, whether the timekeeper is an attorney, and the level of the timekeeper's experience; and (3) the number of hours worked is excessive for the nature of the case.

In light of Great Lakes's objections, in order for the Court to evaluate the reasonableness of Bearden's requested attorney's fees, Bearden must submit additional information.

### III. CONCLUSION

For the foregoing reasons, Bearden shall file evidence of Bearden's updated, actual attorney's fees and costs, including an unredacted copy[3] of its invoices that identify each entry's timekeeper and whether the timekeeper is an attorney, and evidence of the level of experience of each timekeeper.

A separate Order will issue.

Dated: May 28, 2013                        /s/ Gordon J. Quist
                                                                 GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE

---

[3] For purposes of this request, Bearden may file an unredacted copy of its invoices under seal. Bearden may continue to redact confidential information; it merely needs to make line items at the bottom of its invoices available to the Court and opposing counsel for purposes of verifying the total amount actually billed.